Patricia STORCH, Plaintiff,

v.

F. Carvel PAYNE and State of Maryland, Defendants.

Civ. A. No. H–81–1894.

United States District Court,
D. Maryland.

June 2, 1983.

Glenn M. Fallin, Ellicott City, Md., C. Christopher Brown, Baltimore, Md., for plaintiff.

Robert A. Zarnoch, Asst. Atty. Gen., Annapolis, Md., for defendants.

MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

This civil action was filed on July 27, 1981. In her complaint, the plaintiff, a female, sought damages and other relief because of allegedly illegal employment practices of the defendants. Named as defendants were the State of Maryland and F. Carvel Payne, individually and in his official. capacity as Director of the State Department of Legislative Reference.

Pretrial proceedings were not extensive. A motion to dismiss of defendant the State of Maryland was denied in a letter opinion of the Court dated December 7, 1981. Thereafter discovery proceeded, and a pretrial conference was held on June 10, 1982. The pretrial order was filed on June 20, 1982, and the case was scheduled for trial commencing on October 4, 1982. Shortly before the trial, the parties engaged in serious settlement discussions. A written settlement agreement was executed by the parties on September 29, 1982. On October 1, 1982, a stipulation and order was entered by the Court dismissing the case with prejudice, pursuant to the terms of the settlement agreement.

Presently pending is plaintiff's petition seeking an award of attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988. Memoranda and affidavits in support of and in opposition to the pending petition have been filed by the parties and reviewed by the Court. The Court is satisfied that no hearing is necessary for a ruling on the pending petition. *See* Local Rule 6.

More than a month after plaintiff filed her reply to defendants' opposition to the pending petition, plaintiff herself filed a three page affidavit together with an exhibit. Defendants have moved to strike that affidavit, or in the alternative, should the Court accept plaintiff's belated affidavit, defendants request the right to file a counter affidavit correcting alleged misstatements made by the plaintiff.

■ Following a review of the pleadings here, this Court will grant defendants' mo-

tion to strike plaintiff's affidavit. No reason at all has been advanced by plaintiff to explain why this affidavit was not filed with the original petition or at the very least with plaintiff's reply to defendants' opposition. Some of the matters covered in plaintiff's recent affidavit raise factual questions which might well require an evidentiary hearing. Pursuant to Local Rule 6, a party should file supporting affidavits at the time that the party's motion and memorandum is filed, or at the very least at the time the party's reply to the opposition to the motion is filed. For good cause shown, the party would always be entitled to apply to the Court for an Order permitting memoranda or affidavits to be filed outside the time limits set by Local Rule 6. No such request was ever made by the plaintiff, and the Court is aware of no facts which would support any such late filing. Accordingly, defendants' motion to strike plaintiff's affidavit will be granted.

In her petition, plaintiff seeks the award of attorneys' fees in the amount of $34,-619.37 together with $1,311.58 as costs and expenses for a total award of $35,930.95. Five different attorneys rendered services to plaintiff in connection with this case. In her petition, plaintiff has listed the hours expended and the customary hourly rate of compensation for each of these attorneys. The total reached for this calculation is $27,695.50. Plaintiff has submitted that this figure should be subject to an upward adjustment of 25% resulting in a calculation of $34,619.37 as fees.

In opposing the pending petition, defendants first contend that plaintiff is not a prevailing party under 42 U.S.C. § 1988 and is therefore not entitled to any award at all. Defendants further contend that if the Court finds plaintiff to be a prevailing party, it should reduce the amount requested pursuant to the factors established in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.1978).

Pursuant to 42 U.S.C. § 1988, the Court in a federal civil rights action "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the cost." It is well established that a plaintiff may be a prevailing party entitled to recover attorneys' fees and costs even if a federal civil rights case has been settled. *Bonnes v. Long,* 599 F.2d 1316, 1318 (4th Cir.1979). The "sometimes difficult inquiry" in a case which has been settled must be made from an examination of the particular facts of the case. *Id.* 1319. In *Bonnes,* the Fourth Circuit outlined the test in the following language (599 F.2d at 1319):

> this inquiry is properly a pragmatic one of both fact and law that will ordinarily range outside the merits of the basic controversy. Its initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or effect so as to gain a benefit or be relieved of a burden.

In the later case of *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir.1980), the Court further elaborated on the meaning of the term "prevailing party" in § 1988, as follows (632 F.2d at 346–347):

> As we comprehend the rule, to 'prevail' a party must establish in an enduring way that he or she was right on a matter in issue and that the litigation activities served to establish the existence of the right or contributed to an enjoyment of the right. There need not be a formal adjudication in the party's favor; a vindication of rights obtained by a settlement or consent judgment may be sufficient as may a showing that the plaintiff's actions were a catalyst which caused the defendant to remedy his errant ways. However, what always must occur is the establishment of a right or the proscription of a wrong.

The essential claim made by plaintiff in this suit was that the defendants had discriminated against her because of her sex. As a subsidiary claim she also alleged that she had been subjected to discriminatory treatment because of the exercise by her of her First Amendment rights. Claims were asserted here under 42 U.S.C. § 1983, under the Federal Equal Pay Act,

29 U.S.C. § 206(d), and under the Maryland Equal Pay Act, Art. 100, § 55A *et seq.*, Maryland Annotated Code. Specifically, plaintiff contended that she should have been classified as a legislative analyst and paid the wages established for that position. Plaintiff sought both equitable relief and damages. She requested the Court to enter an injunction which would place her in the position of legislative analyst at the appropriate pay grade effective July 26, 1978, and would award her all appropriate pay increments and grade increases that would have occurred had she occupied that position since that date. She also sought back pay, compensatory damages, and punitive damages.

In opposing plaintiff's claims for relief, defendants have asserted that the position of legislative analyst required a law degree and that since plaintiff had no such law degree, she was not eligible for the position in question. By way of reply, plaintiff claimed that she had for several years been performing the tasks of a legislative analyst and that she should have been given this position, even though she had no law degree. Thus, a substantial part of plaintiff's case involved an attack on the validity of the requirement of the Department of Legislative Reference that a legislative analyst have a law degree.

The facts of record illustrate the nature of the right which plaintiff sought to establish. The Maryland Department of Legislative Reference is a staff agency of the General Assembly of Maryland. The Department has both statutory and administrative divisions and functions year round, even though the General Assembly annually meets in session for only 90 days. Plaintiff was first hired on a temporary basis during the 1978 legislative session. At that time, she was in her fourth year of part-time attendance at law school, and she did not finally secure her law degree until some four years later in 1982. In July 1978, after having worked as a temporary employee in several different capacities, plaintiff was hired in a permanent post as Legislative Librarian III. Plaintiff claimed that within six months she was performing the tasks of a legislative analyst. She first requested that she be placed in the position of legislative analyst in November of 1978. Her request was denied by Geoffrey D. Cant, Acting Director of the Department, on the ground that the position of legislative analyst required a law degree.

During the 1979 session of the General Assembly, plaintiff worked on legislation pertaining to the use of gender neutral language in Maryland statutes. A dispute arose between plaintiff and F. Carvel Payne, who was then Director of the Department, concerning alleged lobbying by plaintiff for the Bill dealing with gender neutral language in State legislation. Plaintiff contends that she was merely exercising her First Amendment rights, and she has suggested that defendant Payne did not give her the position she was seeking because of the exercise by her of those rights.

In April 1979, plaintiff once again sought to have her title and compensation upgraded to that of a legislative analyst. In October 1979, the request was repeated that she be given this formal title, either by reclassification or promotion. Both of these requests were denied.

In April 1980, plaintiff renewed her request that she be designated a legislative analyst. Once again the request was denied, and once again defendant Payne refused to promote her or reclassify her to the position she sought on the ground that she still did not have a law degree. However, he did change her job title to that of "Associate Legislative Analyst," a position which did not require a law degree.

In August 1980 and later in June 1981, plaintiff filed formal charges with the Equal Employment Opportunity Commission ("the EEOC") alleging sex discrimination in wages, promotions and working conditions. In her written charge, she specifically compared her performance and duties to two male legislative analysts, namely Gary Hyman and William Ferris. Both of these male employees had law degrees. Hyman was earning a salary of some $37,-

000.00 and Ferris was earning a salary of some $34,000.00. Plaintiff sought pay equal to those two individuals.

This action was filed by plaintiff on July 27, 1981. In the pretrial order, plaintiff summarized her claim as follows:

Subsequent to the filing of the instant suit, Plaintiff has continued to perform work substantially equal to or of a nature comparable to work performed by male employees of the Department of Legislative Reference of the Defendant State of Maryland who were receiving compensation substantially greater than that received by the Plaintiff. The Defendant Payne has continued, subsequent to the filing of the instant suit, to withhold from Plaintiff the rightful placement of her in the position of legislative analyst and to deprive Plaintiff of the compensation and other benefits to which she is entitled on the basis of her employment duties and the skills, effort and responsibilities required in connection therewith, and in so withholding from Plaintiff and depriving Plaintiff of just compensation and other benefits, the Defendant Payne is substantially motivated by Plaintiff's gender and by Plaintiff's exercise of her right of free speech in support of the principle of gender-neutral language.

On May 6, 1982, the EEOC issued a determination concluding that there was no probable cause to believe that plaintiff had been discriminated against on account of her sex. The pretrial conference in this case was held on June 10, 1982, and the case was scheduled for trial commencing on October 4, 1982. In August 1982, plaintiff met with Marcia Bove, Esq. (a lawyer for the EEOC), advised Ms. Bove that she was in danger of being fired from her job and persuaded Ms. Bove to vacate the earlier finding of no probable cause. This action was taken by the EEOC in mid-September without knowing that the trial of this action was scheduled some two weeks later.

The settlement between the parties is set forth in a five-page Settlement Agreement dated September 29, 1982. Under the settlement, plaintiff was to be placed on administrative leave with full pay effective October 11, 1982. During the next six month period, the State of Maryland was required to secure for plaintiff a maximum of three bona fide job offers for permanent full-time employment acceptable to her. If the State failed to obtain such job offers, plaintiff was to remain on administrative leave until such offers were forthcoming. If plaintiff accepted an offer of employment and her employment was terminated within two years, the State was obligated to procure one additional bona fide offer for her. In addition, the State agreed to pay plaintiff five weeks severance pay at the end of her administrative leave. It was expressly provided that the Settlement Agreement did not constitute an admission by defendants of any violations of federal or State law.

In support of her contention that she is a prevailing party, plaintiff asserts that she has

(1) avoided the need for an onerous trial and possible appeal;

(2) separated herself from a difficult work environment (the situs of her dispute with defendants);

(3) been given administrative leave with pay until defendants can offer her three bona fide new job possibilities;

(4) been promised a new position at a Grade 16 to 18 level, as opposed to her present Grade 12 level;

(5) been guaranteed another bona fide offer from defendants should she be terminated within two years from her soon-to-be accepted job; and

(6) been granted other minor benefits.

Obviously, the first two so-called benefits do not establish a right of plaintiff or proscribe a wrong of defendants. In her suit, plaintiff sought not to separate herself from her job in the Department, but in fact to gain a better position there. Had she obtained a judgment following a trial in this case, she would still have been working under defendant Payne in the Department of Legislative Reference.

The question presented is whether the better paying job which plaintiff might be expected to secure at some time in the future pursuant to the settlement, together with sums to be paid her as severance pay and while she is on administrative leave, satisfy the test set forth in the *Bonnes* and *Smith* cases. On the record here, this Court concludes that plaintiff is not the prevailing party under the facts and circumstances of this case.

The precise factual/legal condition that plaintiff sought to change in the Department of Legislative Reference was sex discrimination by the Department and its Director and unequal pay provided women as opposed to men. She further claimed that she had not been promoted because she had exercised her First Amendment rights. To achieve these objectives, plaintiff at trial would have had to have proved that a law degree was not a necessary requirement for the position of legislative analyst. As a result of the settlement, the law degree requirement remains, and whatever sex or other discrimination may have existed in the Department has not been corrected. Plaintiff's actions here were therefore not a catalyst which caused the defendants to remedy their allegedly errant ways of discriminating against females or violating First Amendment rights. Indeed, plaintiff sought to change conditions within the Department, and yet as a result of the settlement she no longer will have any contact at all with the Department, having agreed to employment elsewhere.

An essential term of the settlement involved an agreement between the parties which was in no way a part of this law suit. Plaintiff agreed to leave the Department very shortly after the settlement was reached. Defendants agreed to undertake efforts to find plaintiff another higher-paying State job. Obviously both sides would gain by such terms. The working relationship between plaintiff and defendant Payne was a very difficult one, which had lasted for several years, and which had had an extremely disruptive effect on the performance by the Department of its duties. Plaintiff concedes that as a part of the settlement, she extricated herself "from an obviously unharmonious job setting."

It is clear from the record that defendant Payne would never have approved the settlement unless plaintiff agreed to terminate her employment in the Department. The defendants were willing to undertake to find her another State job at a salary of some $1,000 to $2,000 more than she was currently being paid in order to avoid the expense of a trial and the continuing disruption of the Department. Even if judgment had been entered for the defendants in this case, plaintiff would still have retained her job in the Department, and the unharmonious atmosphere would have continued.

Plaintiff was not seeking some other State job in this suit. Rather she was claiming that she was entitled to specific employment, namely the job of legislative analyst in the Department of Legislative Reference and that she was being denied such employment because of her sex. Under the Settlement Agreement, she is guaranteed some other type of employment with the State of Maryland, but at the time the Agreement was executed she had no idea concerning the type of job to be offered or whether it would even be acceptable to her.

The monetary benefits to be recovered by plaintiff are minimal when compared with her original claims and when her present status is considered. After some 8 years of attending law school parttime, plaintiff now has a law degree from the University of Baltimore School of Law. Presumably, she now qualifies for higher-paying State jobs than she did when this litigation commenced. In her suit, she sought back pay from the State in the amount of some $200,000 (after doubling under the Equal Pay Act) and also some $400,000 in compensatory and punitive damages from defendant Payne. Under the settlement she received five weeks of severance pay, administrative leave pay and a salary of some $1,000 to $2,000 in excess of her present annual pay of $18,-

**1080**

468, to commence when she accepted the new position.

In analyzing cases in which a plaintiff has been found to be a prevailing party, Judge Murnaghan in *Smith v. University of North Carolina, supra,* noted that in each such case "the party to whom fees were awarded *had established the liability of the opposing party,* although final remedial orders had not been entered." 632 F.2d at 351 (Emphasis in original). In a case such as this one which has been settled, no such finding of liability has been made, and a court is faced with the much more difficult task of determining whether the plaintiff was right on an essential matter in issue. Had this case gone to trial, plaintiff would probably not have prevailed in proving sex discrimination or a violation of her First Amendment rights. She did not have a law degree, which was clearly a requirement for the position she sought. Both males occupying the position did have law degrees. Defendants were prepared to present proof indicating that 5 of the 7 legislative analysts working in the Department's Code Revision Division are women, that, of the 18 professional employees hired by defendant Payne since November 1978, 11 of them were women, and that a female employee received the highest starting salary ever paid to a Department employee.

When the pragmatic inquiry required by *Bonnes* is made in this case in the light of the factual/legal condition that plaintiff sought to change, this Court concludes that plaintiff has not established in an enduring way that she was right on a matter in issue. This litigation has not been a catalyst which caused defendants to remedy their allegedly errant ways. If sex or other discrimination existed in the Department at the time of the matters in suit (a doubtful fact on the record here), it still continues to exist. Since neither the establishment of a right nor the proscription of a wrong has occurred in this case, plaintiff is not entitled to the relief she is now seeking.

For all these reasons, this Court finds and concludes that plaintiff was not a prevailing party in this litigation. She is not,

therefore, entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988. Questions concerning whether the fees claimed are excessive accordingly need not be reached.

For the reasons stated, it is this 2nd day of June, 1983 by the United States District Court for the District of Maryland, ORDERED that plaintiff's petition for the award of attorneys' fees and expenses be and the same is hereby denied.