ECOS, INC.; Drew Diehl; Associated Students of Duke University; Steve Schewel and Henry Beck, Members of Associated Students of Duke University; and John Robertson, Plaintiffs,

Crest Street Community Council, Inc.
and Willie Patterson,
Plaintiffs/Intervenors,

v.

Claude S. BRINEGAR, Secretary of United States Department of Transportation; T.J. Morawski, Division Engineer, Federal Highway Administration; McLaughlin D. Faircloth, Commissioner, North Carolina State Highway Commission; W.F. Caddell, Jr., Planning and Research Engineer, North Carolina State Highway Commission; and Nello Teer Company, A Corporation, Defendants.

No. C–352–D–72.

United States District Court,
M.D. North Carolina,
Durham Division.

Oct. 1, 1987.

384

Michael D. Calhoun, Durham, N.C., for plaintiffs/intervenors.

Lacy H. Thornburg, Atty. Gen., and James B. Richmond, Sp. Deputy Atty. Gen., for North Carolina State Highway Com'n.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

A "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). As this case illustrates, this quote expresses a laudable, but frequently ignored, sentiment. The parties herein have spent considerable time during the last five years litigating over attorney's fees. At present, plaintiffs/intervenors' motion for attorney's fees is, for the fourth time, before a court for a ruling.

### FACTS

In 1959, the City of Durham, North Carolina, recognized the need for a highway through the city. Planning for such a highway ensued. The Durham City Council conducted public hearings, consulted with the State Highway Commission, and hired a consulting firm to develop a plan for the highway. The public supported construction of the highway and expressed little, if any, opposition to the proposed location. Accordingly, in early 1968, the City of Durham and the State Highway Commission adopted a plan to construct a highway known as the East-West Freeway. Shortly thereafter, construction began on certain portions of the highway. In November 1972, preliminary construction began on the portion of the highway that extends from Chapel Hill Street to Erwin Road. This portion of the highway was part of the plan to connect Chapel Hill Street to Interstate Highway 85. Objec-

tions, in the form of two legal proceedings, ensued.

In December of 1972, plaintiffs ECOS *et al.* sued to enjoin construction of the Chapel Hill Street to Interstate–85 portion of the freeway. Plaintiffs alleged, among other things, that the highway would have a disastrous effect on the human environment in contravention of the National Environmental Policy Act of 1969 and would destroy public parkland and recreation areas in violation of the Department of Transportation Act of 1966 and the Federal–Aid to Highway Act of 1968. This court entered an order, on February 20, 1973, denying plaintiffs request to enjoin the construction between Chapel Hill Street and Erwin Road. This order, however, enjoined defendants from proceeding with the highway segment between Erwin Road and Interstate–85 until defendants complied with several federal laws governing the construction of highways. The Fourth Circuit affirmed this order on November 5, 1973.

On November 8, 1973, the parties entered a consent judgment whereby plaintiffs agreed to dismiss a portion of their lawsuit and defendants agreed to study and reconsider certain portions of its plans. Defendants conducted these studies and filed the results with the court during 1973 and 1974. Thereafter, the parties apparently conducted negotiations. During this time, the formal litigation lay dormant; the parties did not file any documents with the court between November 6, 1974 and August 27, 1982.

In addition to the *ECOS* litigation, members of the Crest Street community, a black neighborhood in Durham, expressed opposition to construction of the freeway through their community. "Crest Street" retained the North Carolina Legal Assistance Program to represent them concerning the highway construction through their community. In September 1978, Crest Street filed an administrative complaint with the United States Department of Transportation ("USDOT") alleging that defendants' actions violated several laws, including Title VI of the Civil Rights Act of 1964. Crest Street sought, among other things,

prohibition of further highway construction until defendants complied with Title VI. The USDOT investigated Crest Street's complaint and, on February 20, 1980, issued a preliminary finding of reasonable cause to believe that construction of the freeway, according to the North Carolina Department of Transportation ("NCDOT") proposal, would constitute a prima facie violation of Title VI and USDOT Title VI regulations. The USDOT urged the parties to attempt to mediate the contested issues. Over the next two years, the parties conducted the suggested negotiations.

In 1982, negotiations between ECOS, Crest Street, and the defendants culminated. In February 1982, the parties reached a preliminary resolution of the case. Later, in August 1982, defendants moved to dissolve the order, entered by this court in 1973, enjoining construction of the freeway. In October 1982, Crest Street moved to intervene in this action and filed a proposed complaint asserting the claims raised in its administrative complaint. Shortly thereafter, the parties completed the drafting of a "Final Mitigation Plan" and the court entered a consent judgment effectuating this plan on December 14, 1982. Although the court never formally allowed Crest Street to intervene, Crest Street signed the consent judgment.

The consent judgment permitted the construction of the freeway to proceed on a modified basis. The highway construction through the Crest Street community proceeded. But the settlement required the NCDOT to take specified measures to mitigate the freeway's impact. The judgment also dissolved the existing injunction, dismissed the *ECOS* action, and required Crest Street to withdraw its administrative complaint. Crest Street's claim for attorney's fees against the state defendants, however, was dismissed without prejudice. Eventually, Crest Street filed an independent action to recover attorney's fees. After protracted litigation, the Supreme Court held that a claim for attorney's fees under 42 U.S.C. § 1988 may not be brought in an independent action. *Crest Street Community Council, Inc. v. North Carolina Department of Transportation,* 598

F.Supp. 258 (M.D.N.C.1984), *rev'd,* 769 F.2d 1025 (4th Cir.1985), *rev'd,* —— U.S. ——, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986).

On December 24, 1986, Crest Street filed a motion for relief from judgment. Crest Street asked this court to vacate the portion of the consent judgment which dismissed their claim for attorney's fees. The court entered an order on March 31, 1987, granting this motion. Now, some fifteen years after the inception of this litigation, and five years after the settlement of the case's substantive issues, the court is called upon to decide the propriety of compelling the NCDOT to pay attorney's fees to Crest Street.

## DISCUSSION

42 U.S.C. § 1988 provides that in "any action or proceeding to enforce a provision of ... title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Unfortunately, deciding the propriety of awarding attorney's fees to Crest Street is not as easy as it might appear at first blush. The course taken by the litigants in this case has created enough difficult questions to make the most sadistic law professor or bar examiner squeal with delight. In particular, in order to resolve Crest's claim, the court must answer the following general questions:

1) Whether Crest Street is a party to this litigation in view of the fact that the court has not entered an order allowing intervention, and whether intervenors may recover statutory attorney's fees?

2) Whether Crest Street was "the prevailing party" in the ECOS litigation?

3) Whether Crest Street's administrative proceeding was a "proceeding to enforce" Title VI, and whether Crest Street can recover attorney's fees for work performed at the administrative level?

4) What amount of fees should the court award for the work of Crest Street's attorneys regarding the Title VI claims?

5) Should the court reduce the fee award to reflect the limited nature of Crest Street's success?

6) Whether the court should enhance the fee award to compensate for the contingency of success?

7) What amount of fees should Crest Street recover for the efforts expended to recover attorney's fees, and whether Crest Street can recover attorney's fees for the time spent in the separate litigation to recover attorney's fees?

8) What amount of costs, such as fees for expert witnesses, should the court allow to Crest Street's attorneys?

In addition to analyzing this legal quagmire, the court realizes that three different courts have voiced divergent judicial views as to the merits of Crest Street's petition. This court must, therefore, attempt to reconcile its conclusions with the opinions of these courts. For ease of discussion, the court will denominate these opinions as "Crest I" (district court opinion), "Crest II" (Fourth Circuit opinion), and "Crest III" (Supreme Court opinion). The court will now address, in the order presented, these issues.

*I. Whether Crest Street Intervened and Whether Intervenors Can Recover Attorney's Fees?*

■ Crest Street moved to intervene and to file a complaint alleging violation of several statutes, including Title VI, on October 15, 1982. The court never formally ruled on these motions. Nevertheless, the court entered a consent judgment on December 14, 1982 and allowed Crest Street to sign this judgment.

■ It would seem particularly formalistic to deny Crest Street's fee petition, at this juncture, on the basis that Crest Street is not a party to this action. Both the court and the *ECOS* defendants tacitly acknowledged Crest Street's status as a party by allowing Crest Street to sign the consent judgment. This implicit recognition of Crest Street as a party is a sufficient basis for allowing Crest Street to seek attorney's fees. If an applicant for intervention participates in a proceeding in

a manner comparable to that of a recognized party, the applicant may be treated as a party, even though the court has entered no formal order granting the applicant the status of a formal party. *See Alaniz v. California Processors, Inc.*, 13 FEP Cases 738, 742 (N.D.Cal.1976) (citing *Ex Parte Cutting*, 94 U.S. (4 Otto) 14, 20–21, 24 L.Ed. 49 (1877)). *Cf. Miller-Wohl Co., Inc. v. Commissioner of Labor*, 694 F.2d 203 (9th Cir.1982) (fees cannot be awarded to amicus curiae).

Allowing Crest Street to proceed as a party is particularly fair inasmuch as Crest Street had, in retrospect, strong facts favoring the allowance of their motion to intervene. Crest Street claimed an interest relating to the property which was, in part, the subject of the *ECOS* action, and the disposition of the *ECOS* action could have easily, as a practical matter, impaired Crest Street's ability to protect that interest. *See* Federal Rule of Civil Procedure 24(a)(2). In addition, Crest Street's claims were quite similar to the claims of the *ECOS* plaintiffs, and allowing intervention would not have prejudiced the rights of those plaintiffs. *See* Federal Rule of Civil Procedure 24(b)(2).

■ The majority of courts recognize that intervenors may be "prevailing parties" entitled to an award of attorney's fees. *See e.g. Gautreaux v. Chicago Housing Authority*, 610 F.Supp. 29, 30 (N.D.Ill.1985) (citing case law and legislative history in support of ruling). The courts have uniformly, however, scrutinized intervenors' motions for attorney's fees. In *Donnell v. United States*, 682 F.2d 240, 246 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983), the court concluded that "intervenors may be considered as prevailing partys entitled to an award of attorneys' fees. But we do not believe Congress in-

tended such an award be as nearly automatic as it is for a party prevailing in its own right." In particular, the courts have carefully examined the intervenor's role in the litigation in relation to the results achieved. Where an intervenor's efforts do not help to achieve the benefits sought in the lawsuit, courts frequently deny the request for fees. *See Donnell*, 682 F.2d at 246; *Seattle School District No. 1 v. State of Washington*, 633 F.2d 1338, 1349 (9th Cir.1980), *aff'd*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982) (partially upholding denial of fees to intervenor because of intervenor's de minimus contribution to litigation).[1] Accordingly, Crest Street is not disqualified from obtaining attorney's fees by virtue of its status as an intervenor. The court will, however, exercise caution in evaluating Crest Street's contribution to the success obtained.

## II. Whether Crest Street Was A Prevailing Party?

■ 42 U.S.C. § 1988 authorizes awards of attorney's fees to the "prevailing party" in an action or proceeding to enforce Title VI. It is fundamental, then, that the court must first determine who has "prevailed" when ruling on a motion for attorney's fees. This determination is often self-evident. If a plaintiff receives a verdict granting everything sought in a complaint, the plaintiff has obviously prevailed. But when a plaintiff obtains only some of the relief sought, or obtains relief through non-judicial means, the court must consider whether the circumstances of the case make it appropriate to award fees.

### A. Incomplete Success

Defendant argues that plaintiff Crest Street did not prevail because of plaintiff's incomplete success. Defendant notes that the prayer for relief in the complaint ac-

---

**1.** Courts deny attorney's fees to intervenors, under a variety of fee statutes, because of the minimal effect of intervention on the eventual outcome of the case. *See e.g. Carson–Truckee Water Conservancy District v. Watt*, 748 F.2d 523, 525 (9th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985) (intervenor in Endangered Species Act suit failed to show that its efforts substantially contributed to goals of statute); *Posada v. Lamb County, Texas*, 716 F.2d 1066, 1072 (5th Cir. 1983) (intervenors in preclearance reviews under Voting Rights Act not entitled to fees absent showing that their work had substantial independent effect on outcome).

companying the motion to intervene requests only a declaration that defendants violated Title VI and an injunction blocking the completion of the highway. Plaintiff obtained neither a declaration nor an injunction. Therefore, defendant concludes, plaintiff did not prevail. Plaintiff counters this argument by reciting the favorable results received in the Final Mitigation Plan.

Partially successful plaintiffs may be considered "prevailing parties" "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Bonnes v. Long*, 599 F.2d 1316, 1318 (4th Cir.1979). *See Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). The Court emphasized, in *Hensley*, that the degree of a party's success is relevant to two inquiries in the attorney's fee determination. First, the level of success bears on whether a party "prevailed" and is thus entitled to *some* award of fees. In regard to this inquiry, the Court stated that the prevailing party standard is "a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Second, as the quoted language indicates, the level of success bears on the issue of what is a reasonable *amount* of fees. The court may reduce the amount of fees requested to reflect a plaintiff's limited success.

Applying the generous threshold standard to the instant case, the court concludes that Crest Street prevailed. The Final Mitigation Plan, as the name suggests, is a plan to mitigate the detrimental impact of the freeway on the Crest Street community, and the court cannot say that this mitigation fails to provide "some of the benefit [Crest Street] sought in bringing suit" under Title VI. Although the complaint in this action only requests the aforementioned declarative and injunctive relief, the court notes that the administrative complaint seeks a somewhat broader range of remedies. Moreover, defendants relocated an intersection of the highway so as to preserve the community church and park. Crest Street thus achieved a small portion of its overarching goal of relocating the highway. Defendants additionally agreed to develop and finance a new community site in the immediate area, thereby allowing the residents to remain intact as a community. *See Crest II*, 769 F.2d at 1028.

The court agrees, however, that Crest Street's success was limited. It is an undeniable fact that Crest Street sought, and failed to obtain, a declaration that defendants had violated Title VI and an injunction halting construction of the highway. *See Crest III*, ‒‒ U.S. ‒‒, 107 S.Ct. at 342, 93 L.Ed.2d at 198; *Crest I*, 598 F.Supp. at 266. As explained above, limited success where a plaintiff has achieved "some of the benefit ... sought in bringing suit" results in a reduction of the amount of the fee award, not a complete denial of fees. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943 ("inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

## B. Settlement

It is well established that a party need not obtain a final judgment in order to "prevail" for purposes of section 1988; a settlement, consent decree, or other resolution of the underlying dispute short of formal adjudication may still support an award of fees. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *DeMier v. Gondles*, 676 F.2d 92, 93 (4th Cir.1982). As the Supreme Court recently stated:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant.

*Hewitt v. Helms,* —— U.S. ——, ——, 107 S.Ct. 2672, 2676 (1987).

■ Where a plaintiff settles a lawsuit, however, it is difficult for a court to ascertain whether the plaintiff prevailed. Unlike a judicial declaration whereby a judge or jury finds that a plaintiff wins claims "ABC" but loses claims "XYZ," most settlement agreements expressly deny the liability of any party for any wrongdoing. Similarly, a settlement usually results in each party compromising their position. A court reviewing a settlement to determine whether a plaintiff prevailed (and to what extent) must therefore juggle the claims, the relief available for each claim, the benefits received, and the liabilities incurred—a highly factual determination. Lacking a finding on the issue of liability, the relief obtained gains especial importance in the settlement context. The most objective barometer a court has in assessing whether a plaintiff prevailed is to compare the relief the plaintiff sought with the relief the plaintiff obtained. *See Storch v. Payne,* 579 F.Supp. 1074, 1080 (D.Md.1983), *aff'd,* 727 F.2d 1104 (4th Cir.1984) (plaintiff not prevailing party where settlement gave her different relief from that sought in lawsuit and included no finding of liability on part of defendant).

In the present case, the benefits plaintiff obtained in the settlement, when compared to the benefits sought, are sufficient to enable plaintiff to again sneak past the prevailing party threshold. Plaintiff sought, in essence, to alter the course of the highway so as to avoid the residences, church, and park in the Crest Street community. The Final Mitigation Plan alters the course of the highway in order to preserve the community church and park. While the court is mindful that plaintiff's primary goal was to completely stop the highway from traversing the community, the court must conclude, albeit with some hestitation, that plaintiff resolved a "significant issue in litigation" and thereby achieved "some of the benefit sought in bringing suit." It bears reiteration, however, that a reduction in the amount of fees is necessary.

## C. Plaintiff As "Catalyst"

Defendant argues that even if plaintiff received significant benefits from the defendants, plaintiff's participation in the lawsuit—i.e. the motion to intervene—did not contribute to the success obtained. Defendant stresses that the parties had reached a preliminary resolution months before the motion to intervene. Defendant suggests that this preliminary resolution conferred the same basic benefits to Crest Street as the final settlement agreement and argues that the parties would have adopted the final settlement agreement regardless of whether Crest Street intervened in the *ECOS* action. Therefore, defendant concludes, Crest Street's intervention had no "catalytic" effect on the settlement and Crest Street is not a prevailing party.

The court sympathizes with defendant's position. The motion to intervene had little, if any, effect on the final settlement of this case. Indeed, the parties reported a settlement to the media in February 1982, months before Crest Street moved to intervene, in September 1982, in the *ECOS* action. The nature and extent of this preliminary settlement is poignantly illustrated by the number of hours plaintiff's attorneys spent on this litigation after February 1982. Crest Street requests compensation for a total of 1109.75 hours of attorney and staff attorney time for work performed on the substantive Title VI claims. Yet after a request for fees for "final preparation of mitigation plan" on February 25, 1982, Crest Street's attorneys only worked 37.25 hours until filing the motion to intervene on October 14, 1982. None of these hours, unlike many entries for December 1981 through February 1982, are denominated as "settlement negotiations." Moreover, Crest Street's attorneys only request compensation for 30 hours of work performed after the filing of the motion to intervene. These hours were spent reviewing and revising drafts of the final mitigation plan and preparing the consent judgment eventually entered by this court. The evidence indicates that the final settlement reflects the agreement reached between the parties in February 1982. In this light, it is diffi-

cult for this court to determine, in a factual and pragmatic sense, that Crest Street's intervention served as a catalyst for the relief Crest Street ultimately obtained.[2]

Nevertheless, after reviewing the precedent in the Fourth Circuit, the court must find that Crest Street prevailed. In *Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir.1979), the court concluded that the inquiry on the prevailing party issue includes the question of whether the outcome of the lawsuit "is one to which the plaintiff fee claimant's efforts contributed in a significant way." The Fourth Circuit has interpreted the "significant contribution" requirement quite expansively. *Bonnes* and decisions interpreting the language of *Bonnes* indicate that a plaintiff's efforts need only make a minimal contribution, not a significant contribution, to the outcome of the suit in order for the plaintiff to qualify for attorney's fees.[3]

In *Bonnes*, plaintiff migrant farm worker's association brought suit against defendant farm owner alleging that defendant had denied plaintiff access to migrant workers located on defendant's farm. After hearing a motion for a preliminary injunction, the district court entered a consent order. Plaintiff moved for attorney's fees, and defendant contested this motion. The district court found that "the defendants' 'prevailing practice all along' was to permit access after reasonable notice. Because the consent judgment, therefore, had done little more than incorporate the status quo in a court order ..., the defendants were the prevailing parties and that, therefore, plaintiffs were not entitled to attorney's fees under 42 U.S.C. § 1988." *Bonnes v. Long*, 651 F.2d 214, 217 (4th Cir.1981), *cert. denied*, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982). On appeal, the Fourth Circuit ruled that even if the district court's findings of fact were correct, it was error for the district court to conclude that plaintiff's institution of the lawsuit did not result in the "actual conferral of benefit." As a matter of law, the court concluded that an actual conferral of benefit resulted because "the consent order entered by the district court remedied the state of uncertainty that the plaintiffs had been forced to go to court to resolve." *Id.*, 651 F.2d at 218. The court opined:

> Having put the plaintiffs to the time and expense of litigation in order to clarify their rights, the [defendants] cannot now be heard to complain about bearing the cost of that measure, even if, as the

---

2. Crest Street argues that, at the time it moved to intervene, critical issues, including the funding of the mitigation plan, were unresolved. In particular, Crest Street argues that the "linchpin of the mitigation plan, the use of last resort housing, was cast in doubt at this time." As evidence of this problem, Crest Street quotes portions of a file memorandum, prepared by defendant, summarizing a meeting of October 14, 1982. Significantly, Crest Street fails to note the portion of this memorandum stating that it "was agreed by everyone that the cost was not the problem, because it was agreed that the City is committed to pay the total cost." Less than one week later, the parties again met and defendants informed Crest Street that if the City did not have the legal authority to provide last resort housing, then the North Carolina Department of Housing could provide it. The court is of the opinion that Crest Street's position was not endangered at this time. The evidence indicates that the defendants continued to agree to provide last resort housing, and the only debate concerned which particular defendant was legally authorized to provide these benefits.

3. Other circuits approach this problem differently than the Fourth Circuit. First, most circuits follow a two-part test to establish a party's entitlement to a fee award. This test requires a plaintiff to show (1) a causal connection between the filing of the suit and the defendant's action and (2) that defendant's conduct was required by law, i.e., not a wholly gratuitous response to an action that was frivolous or groundless. *See e.g. Nadeau v. Helgemoe*, 581 F.2d 275, 287 (1st Cir.1978). The Fourth Circuit appears to focus only on causation, a position which has provoked a dissent from Justice Rehnquist. *Bonnes v. Long*, 599 F.2d at 1319, *on appeal after remand*, 651 F.2d at 217, *cert. denied*, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982) (Rehnquist, J., dissenting from denial of certiorari).

In addition, other circuits appear to require a plaintiff's lawsuit to make a more significant contribution than the Fourth Circuit requires in order for the plaintiff's lawsuit to be a catalyst. *See e.g. Casines v. Murchek*, 766 F.2d 1494, 1504 (11th Cir.1985) (lawsuit was not catalyst for reinstatement); *Gerena-Valentin v. Koch*, 739 F.2d 755, 759 (2d Cir.1984) (plaintiff who filed duplicative lawsuit held a "latecomer" and "not a catalytic or substantial factor" in obtaining injunction).

district court concluded, the court order did nothing more than "spell out what, in effect, had been the [defendant's] prevailing practice all along."

*Id.* Accordingly, where a lawsuit clarifies the rights or obligations between two parties, this clarification is a sufficient catalytic effect to support a finding that the plaintiff is a prevailing party, even if the lawsuit does not change the relationship between the parties. In the instant case, the consent judgment, if nothing else, clarified the relationship between the parties.

■ Similarly, in *Disabled in Action v. Mayor and City Council of Baltimore,* 685 F.2d 881 (4th Cir.1982), the Fourth Circuit clearly demonstrated that a plaintiff's efforts need only be minimal in order for a court to find a catalytic effect. In *Disabled,* plaintiffs challenged the lack of facilities for the handicapped at Baltimore Memorial Stadium. After plaintiffs unsuccessfully sought a preliminary injunction, the court action lay dormant except for the formal pleadings. The parties instead pursued the dispute before the Maryland Commission of Human Relations. The dispute settled when defendants agreed to take certain corrective measures and plaintiffs waived their right to litigate their claims further. The plaintiffs then filed an application for attorney's fees. Defendants objected to the application on the grounds that the corrective actions were already in planning before plaintiffs even threatened legal action. The district court accepted, to a limited extent, defendants' version of the facts. The district court nonetheless awarded fees finding that plaintiff's lawsuit was "responsible" for some of the corrective actions. In affirming the district court, the Fourth Circuit stated:

> Under the law of this circuit, a party may be entitled to fees even though he was not solely or primarily responsible for the favorable disposition of a legal controversy. ... Fees may be awarded even where a party's efforts have merely "served to a limited extent to expedite the planning and achievement gained."

*Id.,* 685 F.2d at 885–86. Accordingly, where a plaintiff resorts to the judiciary and thereby expedites the receipt of relief, a court may conclude that the plaintiff was a catalyst for the relief obtained. As a practical matter, this court is unable to say that Crest Street's intervention into the *ECOS* litigation did not, to some degree, expedite the entry of the consent judgment in this action. Indeed, Judge Ward found, in *Crest I,* that "it is obvious that the purpose of the attempted intervention was to prompt speedy execution of the Final Mitigation Plan." *Crest I,* 598 F.Supp. at 266.

■ Finally, the court notes that, under *Disabled,* the fact that much of the relief Crest Street obtained may have resulted from ECOS's, not Crest Street's, efforts is not a bar to Crest Street's recovery of fees. In *Disabled,* the court explicitly stated that a party need not be "solely or primarily responsible" for the favorable results in order to be eligible to collect fees.

*III. Whether Crest Street's Administrative Proceeding Was A "Proceeding To Enforce" Title VI, and Whether Crest Street Can Recover Attorney's Fees For Work Performed At The Administrative Level?*

Section 1988 authorizes an award of attorney's fees to the prevailing party in an "action or proceeding to enforce a provision of" Title VI. "[T]ime spent on administrative *proceedings to enforce* the civil rights claim prior to the litigation" is compensable; time spent on an administrative matter that "is *not a proceeding to enforce* one of the § 1988 civil rights laws" is compensable only if the work product from that administrative matter is "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Crest III,* —— U.S. at ——, 107 S.Ct. at 342, 93 L.Ed.2d at 197. The issue herein is whether the particular administrative matters pursued by Crest Street were "proceedings to enforce" Title VI.

Two recent Supreme Court cases address the question of what constitutes a "proceeding to enforce." In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Su-

preme Court ruled that, under Title VII, a prevailing party may recover fees for state administrative proceedings pursued prior to filing a complaint in federal court. The Court interpreted "proceeding" to include any administrative or judicial proceeding to which plaintiffs "are required to resort" under the terms of Title VII before filing suit in federal court. *Id.*, 447 U.S. at 62, 100 S.Ct. at 2030. In contrast, the Court indicated in *Webb v. County Board of Education,* 471 U.S. 234, 240–41, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985), that non-mandatory administrative proceedings to enforce rights created by state law are not "proceedings to enforce" a statute recognized in 42 U.S.C. § 1988.

Defendant argues that plaintiff cannot recover attorney's fees because plaintiff did not prevail in a "proceeding to enforce" Title VI. In support of this argument, defendant advances two rationales. First, looking literally at § 1988's "proceeding to enforce" language, defendant contends that the plaintiff's particular administrative efforts were not proceedings designed to enforce Title VI. Defendant notes that regulations promulgated to effectuate Title VI mandate that any grievances "will be resolved by informal means whenever possible." 49 C.F.R. § 21.11(d)(1). Informal negotiations that lead to a settlement, defendant argues, are not typically denominated as an administrative or judicial "proceeding." Defendant also notes that plaintiff proceeded under 49 C.F.R. § 21.11 and argues that § 21.11 does not concern the enforcement of Title VI. Rather, defendant asserts that § 21.11 merely governs the "conduct of investigations," and that 49 C.F.R. § 21.13 delineates the enforcement procedure for Title VI.

■ The court rejects defendant's argument that plaintiff's administrative efforts, literally speaking, were not "proceedings to enforce" Title VI. Crest Street's administrative complaint contained, among other things, a claim that the proposed highway extension would violate Title VI. Crest Street filed this administrative complaint, with the USDOT, pursuant to Department of Transportation regulations titled in part "Effectuation of Title VI of the Civil Rights Act of 1964" *See* 49 C.F.R. § 21.1 *et seq.* The Department of Transportation specifically established these regulations to enforce rights created by Title VI, and the stated purpose of the regulations "is to effectuate the provisions of Title VI of the Civil Rights Act of 1964." 49 C.F.R. § 21.1. *See* 42 U.S.C. § 2000d–1 (directing federal agencies "to effectuate the provisions of [Title VI] ... by issuing rules, regulations, or orders of general applicability"). The court finds, after viewing the language, format, and purposes of the regulations, defendant's arguments to be semantical, not substantive.

■ Defendant's second argument is that resort to administrative proceedings is optional under Title VI and, therefore, Title VI administrative matters are not "proceedings to enforce" under the *Carey* and *Webb* decisions. *Carey* and *Webb,* defendant argues, limit "proceedings to enforce" to those administrative proceedings to which plaintiffs "are required to resort" under the terms of the *statute.* Title VI does not require a plaintiff to resort to any administrative proceedings before filing suit in district court, and *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), makes clear that a plaintiff need not exhaust administrative remedies before filing an action in district court for violation of Title VI.[4] Therefore, defendant concludes, Crest Street's administrative action was not a "proceeding to enforce" Title VI because

---

4. Although *Cannon* involved claims under Title IX, the Court indicated that Title VI and Title IX should receive similar constructions. The Court specifically discusses Title VI and opines that "it makes little sense to require exhaustion." *Id.*, 441 U.S. at 706–08 n. 41, 99 S.Ct. at 1962–63 n. 41. Since *Cannon,* the courts have uniformly held that a plaintiff need not exhaust administrative remedies before suing under Title VI.

*See e.g. Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 737 (3d Cir.1983). The court notes that a split of authority, on the exhaustion requirement, existed at the time Crest Street filed its administrative complaint. *See Rios v. Read,* 480 F.Supp. 14, 20–21 (E.D.N.Y.1978) (discussing split of authority, before *Cannon,* on issue of exhaustion under Title VI).

Crest Street was not "required to resort" to administrative proceedings before pursuing its claims in federal court.

The court also rejects defendant's argument that *Carey* and *Webb* mandate a denial of fees in this case. This case involves administrative proceedings very different from those involved in *Carey* and *Webb.* Those opinions concern a plaintiff's resort to administrative proceedings established by *state* law to enforce rights under both state and federal law. In contrast, Crest Street's administrative complaint specifically sought redress for a violation of *Title VI*, a statute specifically set forth in § 1988, and Crest Street filed this complaint with a *federal* agency. It would obfuscate clear statutory language if this court were to hold that a proceeding before a federal agency, pursuant to federal regulations designed to effectuate Title VI, is not a "proceeding to enforce" Title VI.[5]

Defendant also asserts that since Crest Street's administrative work was not in a "proceeding to enforce" Title VI, the work is not compensable, under *Webb*, because it was not "of a type ordinarily necessary to advance the ... litigation to the stage it reached before settlement." Even if the court construes *Carey* and *Webb* to mean that an optional administrative proceeding cannot be a "proceeding to enforce," the court would allow Crest Street to recover under the facts of this case. *Webb* gives a district court the discretion to compensate work performed at an administrative level, even if the work was not performed in a "proceeding to enforce" Title VI, provided that the "discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." Defendant admitted, at oral argument, that the work in the administrative proceedings was "useful;" the discussions arising from the regulation's mandate that matters "will

be resolved by informal means whenever possible" eventually culminated in a settlement. 49 C.F.R. § 21.11(d)(1). Moreover, the work performed at the administrative level was obviously and ordinarily necessary to place the parties in the position to reach a settlement. The majority of the administrative proceedings took the form of developing a theory of the case, filing a complaint, gathering evidence, and engaging in settlement negotiations. Had Crest Street filed a court action, the same work would have been necessary. *See Webb*, 471 U.S. at 254, 105 S.Ct. at 1935 (fees may be awarded where work was "useful" and "substituted for work at the judicial stage that would have been 'ordinarily necessary' to a successful outcome") (Brennan, J., dissenting). In this light, the court concludes that, even if Crest Street's administrative work was technically not a "proceeding to enforce" Title VI, Crest Street may recover for the useful and reasonable work performed at the administrative level.

### IV. Amount of Fees

Having determined that Crest Street is entitled to recover attorney's fees, "[i]t remains for the ... court to determine what fee is 'reasonable.' " *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. In making this determination, the critical focus is in determining the "lodestar figure," i.e., the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Daly v. Hill*, 790 F.2d 1071, 1077–78 (4th Cir.1986). Although a lodestar figure, by definition, is a "starting point," the Supreme Court has recognized that "[i]f a lodestar fee is properly calculated, adjustment of that figure will, in most cases, be unnecessary." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Daly*, 790 F.2d at 1078. Stated differently, when "the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting prod-

---

**5.** The court notes that it may be bound by the Fourth Circuit's determination of this exact issue in the companion case to this action. In that opinion, the Fourth Circuit also concluded that Crest engaged in a "proceeding to enforce."

*Crest II*, 769 F.2d at 1029–30. The Supreme Court reversed the Fourth Circuit's holding on other grounds, leaving undisturbed the Fourth Circuit's reasoning and conclusion relating to the "proceeding to enforce" issue.

uct is presumed to be the reasonable fee contemplated by § 1988." *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The gravaman of calculating the lodestar figure is thus to determine what is reasonable, and, in this regard, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Daly*, 790 F.2d at 1079. Accordingly, it is now the task of this court to determine the amount of a reasonable fee for the work in this action.

### A. Calculation of Hours Reasonably Expended

■ In calculating what hours counsel reasonably expended on the litigation, case law makes clear the analysis in which a court must engage. The court should first reduce the requested award to reflect any inadequacies in the documentation of hours expended and then exclude hours that were not "reasonably expended":

> The party seeking an award should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court *also* should exclude from this initial fee calculation hours that were not "reasonably expended."

*Hensley*, 461 U.S. at 433–34, 103 S.Ct. at 1939 (emphasis added).

### (i) Inadequacy of Documentation

Adequate documentation serves two interrelated purposes. First, it allows the court and the nonprevailing party to determine what hours were "reasonably expended on the litigation." *Webb*, 471 U.S. at 242, 105 S.Ct. at 1928; *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. It is fairly obvious that a request, for example, for payment for 200 hours of "research," without further explanation, would thwart any attempts to determine if the research was reasonably expended on the litigation. Second, adequate documentation allows a court to determine what hours counsel spent on what claims. A court must, under

*Hensley*, reduce an award, under certain circumstances, to reflect a litigant's "partial or limited success." This reduction, in some cases, involves a subtraction of hours spent on unsuccessful claims, and a litigant, therefore, "should maintain billing records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

■ Understandably, the courts have not created a precise formula that an attorney must follow in maintaining billing records. An attorney need not show "the exact number of minutes spent nor the precise activity to which each hour was devoted." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982); *Spell v. McDaniel*, 616 F.Supp. 1069, 1086 (E.D.N.C.1985), *aff'd in part and rev'd in part*, 824 F.2d 1380 (4th Cir.1987). It would be overly burdensome and counterproductive to require an attorney to record in great detail how each minute of his time was expended. On the other hand, the fee application must contain sufficient detail to permit the court and opposing counsel to appraise the merits of the application. *Id.* The documentation supporting the request for fees "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were *actually and reasonably expended.*" *United Slate, Tile & Composition v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 n. 2 (6th Cir.1984) (emphasis supplied). At the very least, an attorney should identify the general subject matter of his time expenditures. *See Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. For instance, an attorney in this case could easily denominate time spent as "research on law of Title VI" rather than merely "research" or "conference with clients regarding settlement offer" instead of "conference with clients." Unfortunately, the documentation in this case is clearly inadequate. It is impossible for this court to determine whether the claimed hours were "actually and reasonably expended" on the litigation.

Crest Street claims more than 50 hours for planning. These claims are denominated, in the application for fees, as "planning," "planning meeting," "planning conference," and "Crest Street planning." In addition, Crest Street claims 36.5 hours for "Crest Street meeting" and "Crest Street Steering Committee meeting." There is no evidence describing the work performed. Similarly, Crest Street requests compensation for approximately 47 hours of "legal research," "factual research," and "legal and factual research." Crest Street claims these hours in addition to numerous hours requesting fees for "legal" or "factual" research regarding "X" subject. It is evident that the court cannot determine, in the absence of further explanation, the reasonableness of "planning" or "research." Although planning and research are vital elements of most lawsuits, the number of planning and research hours reasonably necessary to address a particular subject varies according to the nature of the subject involved. Crest Street's failure to record the subject matter of each planning or research session deprives the court and opposing counsel of a fair opportunity to assess whether the number of hours expended is reasonable. Clearly, an attorney exercising proper billing judgment would not bill a client approximately $11,475 under the rubric of "planning" and "research" without some further explanation. Nonetheless, counsel for Crest Street is attempting to recover for such billing in this case. The court and opposing counsel are entitled to the same consideration, in regard to documentation of fees, that a client should normally receive. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940 (hours not properly billed to *client* are not properly billed to *adversary* ); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (same).

In addition, Crest Street's documentation fails to support the number of hours claimed for meetings with clients. Crest Street claims over 190 hours for "meetings" and "conferences" with clients. Counsel has not submitted any evidence pertaining to the content or purpose of these meetings. The documentation does not illuminate the way in which these conferences aided the preparation or resolution of the case. The court recognizes that conferences with the client are desirable and needed in litigation. An attorney must discern a client's needs and wants, apprise the client of the progress of the litigation, and prepare the client for depositions and trial. But where, as here, an attorney claims a substantial fee for client meetings, the attorney must prove the reasonableness of this time. *See Daly,* 790 F.2d at 1079–1080. Counsel for Crest Street has not even attempted to prove reasonableness, and the reasonableness of the claimed hours is not apparent to the court.

Finally, the court believes some commentary on the hours claimed for phone and mail correspondence is needed. Crest Street's application for fees contains 155 entries, totalling 58 hours, for writing letters and making telephone calls. These entries don a variety of guises including "correspondence with X," "communication with X," "call to X," "telephone conference with X," and "phone consultation with X." Crest Street makes no claims of less than ¼ hour, and 115 of the 155 entries are for exactly ¼ hour. From the outset, the court notes that the number of hours is unexceptional. It took the litigants approximately five years to resolve the substantive issues in this case, and 58 hours of correspondence is not exceptional in light of the time period and the extensive settlement negotiations involved in the case. It is noteworthy, however, that 115 of the 155 entries are for 15 minutes, and all of the entries are in multiples (e.g. 30 minutes, 45 minutes, etc.) of 15 minutes. Indeed, all of counsel's entries, over a five year period, are for even numbers. A review of any page in the application for fees will show claims for "3 hours" or "5 hours," never "3.4 hours" or "4.8 hours." An affidavit from Alice Ratliff, one of Crest Street's attorneys, states that "hours are listed to the nearest quarter hour; thus, all items of less than 7.5 minutes, such as short phone calls, are not billed." Despite this explanation, the court finds the billing of Crest Street's attorneys unacceptable. Due to

the "rounding" of figures, the court is not convinced that the time records accurately reflect the amount of time actually expended on the one the case. The submitted figures appear to be rough estimates, and the court finds it difficult, in this light, to believe that these records are "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *National Association of Concerned Veterans*, 675 F.2d at 1327.

In summation, fairness dictates that the court reduce the hours claimed, by some percentage, to reflect the inadequate documentation of hours. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). The recordation makes it difficult for the court to believe that counsel accurately and contemporaneously noted the amount of time *actually* expended. Even if the court believes the actual time to be accurate, the complete lack of specificity in describing the work performed makes it impossible for the court to determine whether the discussed hours were "reasonably expended." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939, 790 F.2d at 1079; *Copeland*, 641 F.2d at 891.

### (ii) Hours Not Reasonably Expended

*Hensley* directs district courts to exclude from the "initial fee calculation hours that were not 'reasonably expended on the litigation.'" This exclusion encourages a high level of professional conduct. Legal ethics demand that attorneys only seek compensation for the reasonable value of their work. The reason for this maxim is clear; if hours alone is the criterion for fee awards, "economy of time may cease to be a virtue. Inexperience, inefficiency, even incompetance will be rewarded." Hornstein, *Legal Therapeutics: The "Salvage*

*Factor in Counsel Fee Awards*, 69 Harv.L. Rev. 658, 661 (1956).

In administering the rule of excluding unreasonable hours, *Hensley* directs that courts focus on excessiveness and duplication:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. In addition, *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), indicates that most of the factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), "are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward." *Daly*, 790 F.2d at 1077.[6] The Fourth Circuit expressly embraced the *Johnson* factors in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), and recently summarized the factors to include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the

---

**6.** Crest Street asks the court to follow the procedure announced in *Anderson v. Morris*, 658 F.2d 246 (4th Cir.1981), in calculating and adjusting the lodestar amount. *Anderson* required the district court to (1) multiply the number of hours reasonably expended by the customary rate to determine an initial amount for the fee

award, and (2) adjust this amount on the basis of the *Johnson* factors. The Fourth Circuit made clear, in *Daly*, 790 F.2d at 1077, that the Supreme Court disapproved of the *Anderson* procedure. Accordingly, the court declines to follow *Anderson* and will, instead, follow the procedure approved in *Daly*.

amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel,* 824 F.2d at 1402 n. 18. In evaluating the present case under *Hensley, Blum, Daly,* and *Johnson,* the court finds several items relevant to the determination of the number of hours reasonably expended by counsel for Crest Street.

This case proceeded primarily under Title VI of the Civil Rights Act of 1964. "The evolving law under Title VI has provided a dual enforcement mechanism, comprising private suits brought directly against the offending instrumentalities and administrative proceedings for termination of funding as prescribed by 42 U.S.C. § 2000d–1." *Adams v. Bell,* 711 F.2d 161, 167–68 n. 35 (D.C.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984). Crest Street elected to proceed under the administrative provisions of Title VI. 49 C.F.R. § 21.1 *et seq.* (1986). Section 21.11(b) allows an individual to file a complaint with the Office of the Secretary of Transportation, and the Secretary, pursuant to § 21.11(c), investigates the complaint. If the Secretary concludes that a recipient of funding appears in violation of Title VI, the Secretary informs the recipient and "the matter will be resolved by informal means whenever possible." 49 C.F.R. § 21.11(d)(1). Finally, if the matter cannot be resolved by informal means, the Secretary takes action, as provided for in § 21.13, to effect compliance. As is evident from the enforcement scheme, the regulations contemplate limited participation by private individuals in a Title VI administrative proceeding. A private individual might actively participate in the administrative proceeding in two ways: (1) filing an administrative complaint, and (2) settlement negotiations after the Secretary determines that a funding recipient appears in violation of Title VI.

A review of the present case, in light of this regulatory scheme, indicates that Crest Street engaged in unreasonably excessive work in this case. Crest Street filed its administrative complaint on September 7, 1978. Prior to that date, Crest Street seeks compensation for 335.25 hours work. On February 20, 1980, the Secretary of Transportation issued a preliminary finding of a prima facie violation of Title VI. At this juncture in the litigation, Crest Street's attorneys had worked for 648.25 hours. The court finds the 648.25 hours spent before the Secretary's preliminary finding to be patently unreasonable. The regulations do not contemplate action by an individual, other than the filing of the administrative complaint, until the Secretary makes a preliminary finding. An individual's participation, other than filing a complaint, is settlement negotiations *after* the Secretary's finding. Such settlement negotiations should, and will, be compensated. But excessive work of a type not contemplated by the statute or regulations is unreasonable, and 648.25 hours is clearly an unreasonable amount of time to investigate, plan, draft, file, and pursue the administrative complaint filed in this action.

In addition, much of the time the attorneys spent involved unnecessary, nonlegal matters. For example, the application for fees contains a request for compensation for over 40 hours of meetings with an anthropologist. Another example is a letter written to the Department of Transportation's Office of Civil Rights, on October 29, 1979, asking the office to intervene in the Durham City Council elections. The file is replete with correspondence, to state and federal governmental groups that might have had an interest in the highway extension, detailing the alleged discrimination and repeating the requested relief. There are literally dozens of these "mini-complaints."

The court also believes that the lawyers duplicated time on some matters. The number of hours for "meetings with client," for example, is unusually large because there were normally two attorneys present at these meetings. Similarly, two

attorneys normally attended public meetings regarding the highway.

### B. Calculation of Hourly Rate

 The court has the duty to award the rate customarily charged in the community provided, of course, that the rate is reasonable under the circumstances. In ascertaining this rate, the court looks to its own knowledge and affidavits from prevailing counsel regarding the customary rate. *See e.g. Dennis v. Chang*, 611 F.2d 1302, 1309 (9th Cir.1980) (affidavits); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir.1973) (knowledge of court). Furthermore, the court considers the "experience, reputation and ability of the attorney." *Johnson*, 488 F.2d at 718.

 Crest Street's attorneys request hourly rates of $85 per hour for attorneys, $45 for staff associates (law school graduates who have not been admitted to bar), $25 for paralegals, and $20 for law clerks. Crest Street has submitted affidavits in support of the requested rates, and defendants do not appear to oppose this portion of Crest Street's request.

Having considered the relevant factors, the court grants the requested rates. The rates are reasonable and customary for work performed in Durham, North Carolina. In addition, the court declines to discount the rates to reflect the inexperience of counsel. Crest Street's attorneys presented quality work to the court and a young attorney "should not be penalized for only recently being admitted to the bar" where the attorney demonstrates legal skill and ability. *Johnson*, 488 F.2d at 719. Any adjustments necessary to reflect

counsel's inexperience will be in the form of a reduction in the claimed hours.[7] This lawsuit suffers from work quantity, not work quality.

### C. Calculation of Lodestar

For work in the administrative proceeding and *ECOS* action regarding the claims under Title VI, Crest Street requests:

| Worker | Hours | Rate | Total |
|---|---|---|---|
| Attorney | 1,019.75 | $85. | $86,678.75 |
| Staff Associate | 90.00 | $45. | $ 4,050.00 |
| Paralegal | 104.00 | $25. | $ 2,600.00 |
| Law Clerk | 45.50 | $20. | $ 910.00 |
| TOTAL | | | $94,238.75 |

The court has determined that a reduction is proper because of the inadequate documentation of the claimed hours. Alternatively, a reduction is warranted based on the unreasonable number of hours expended on the case. Additionally, the court has approved the requested hourly rates. Rather than engage in a detailed item by item reduction of the hours, an impossible task due to the inadequate documentation, the court exercises its discretion and makes a percentage reduction of 45% from the requested amount. Accordingly, the lodestar amount in this case is $51,831.31.

### V. Adjustment For Extent of Success

 *Hensley* emphasizes that the district court must specifically evaluate the extent of a plaintiff's success in order to determine the proper amount of an award of attorney's fees under 42 U.S.C. § 1988:

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit con-

---

7. The principal attorney in this case, Mr. Calhoun, is inexperienced. Mr. Calhoun began working on this case as a law student, and it is fair to say that he gained much of the legal experience he now possesses while litigating this case. Although Mr. Calhoun did quality substantive work, his inexperience significantly and adversely affected his billing judgment. An inexperienced attorney invariably engages in some unnecessary work. The court will not reiterate the reasons why much of the work performed in this case was unnecessary. Moreover, inexperienced attorneys often have trouble keeping accurate time records. Indeed, Mr. Cal-

houn's recordation of time has improved significantly as the years have passed in this litigation. In early years, Mr. Calhoun had the previously discussed problems of imprecise timekeeping and failure to describe sufficiently the nature of the work. In contrast, entries for later years—specifically the hours claimed for work done in the attempt to recover attorney's fees—have hours detailed in 1/10 of an hour increments and work described in some detail. The court is of the opinion that Mr. Calhoun's inexperience resulted in many of recordation problems discussed herein.

sists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. The Court's opinion in *Hensley* indicates that this determination is of such importance that the district court should make it separate from, and subsequent to, the calculation of the lodestar figure:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."

*Id.,* 461 U.S. at 434, 103 S.Ct. at 1940. After review, the court finds that the claims in this case were related. Although Crest Street presented varied legal theories in both the administrative complaint and the complaint filed with the motion to intervene, these theories were all premised on the same factual circumstances. No one claim was "distinct in all respects" from any other claim.

Accordingly, the proper inquiry in this case is whether Crest Street's success was "limited in comparison to the scope of the litigation as a whole." *Id.,* 461 U.S. at 440, 103 S.Ct. at 1943. This inquiry basically requires a comparison of the overall relief obtained by the plaintiff with the relief sought by the plaintiff. A "court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *The result is what matters." Id.,* 461 U.S. at 435, 103 S.Ct. at 1940 (emphasis supplied).

The complaint filed with Crest Street's motion to intervene sought (1) an injunction prohibiting extension of the highway through the Crest Street community and (2) a declaration that the defend-

ants' practices violated Title VI and other laws. Although Crest Street received favorable benefits from the settlement, Crest Street achieved neither of the overarching goals stated in the complaint. The settlement required defendants to modify an intersection of the highway, but the highway nonetheless proceeded through the Crest Street community and thereby displaced a majority of the community's members. The settlement did not declare that defendants violated any laws. In this light, the court is compelled to view Crest Street's success as "only partial or limited."

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.,* 461 U.S. at 440, 103 S.Ct. at 1943. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* The court is convinced that the requested fee award is excessive in view of limited nature of plaintiff's success. The court, however, thinks that the calculation of the lodestar properly reflects any reduction warranted because of plaintiff's limited success. In other words, the lodestar "is reasonable in relation to the results obtained." The court emphasizes, however, that had it not already decided to reduce the amount plaintiff requests down to the amount of the lodestar, the court would make such a reduction solely on the basis of plaintiff's limited success. Plaintiff's limited success, unreasonable expenditure of time, and failure to adequately document hours are independent and alternative grounds for the court's reduction of the requested fee.

### VI. Contingency of Success

Crest Street asks the court to increase the lodestar amount so as to compensate counsel for the risk of not prevailing. In *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (U.S.1987), five members of the Supreme Court opined that a contingency enhancement may be permissible in appropriate cases.[8] Al-

---

**8.** Justice O'Conner expressed her views in a con- curring opinion. Justices Blackmun, Brennan,

though *Delaware Valley* was decided under the Clean Air Act, 42 U.S.C. § 7604(d), the decision plainly applies to awards under 42 U.S.C. § 7604(d), the decision plainly applies to awards under 42 U.S.C. § 1988. *See Delaware Valley*, at ——, 107 S.Ct. at 3086–87. The Fourth Circuit recently interpreted *Delaware Valley* and concluded that Justice O'Connor's concurring opinion delineates the circumstances in which a contingency enhancement may be allowable. *Spell*, 824 F.2d at 1404.

■ In *Delaware Valley*, Justice O'Connor recited two propositions that direct a district court's determination of when a contingency enhancement is appropriate. First, the "compensation for contingency must be based on the difference in market treatment of contingent fees *as a class*, rather than on an assessment of the 'riskiness' of any particular case." *Id.*, at ——, 107 S.Ct. at 3089. "A court should not award any enhancement based on 'legal' risks or risks peculiar to the case. The lodestar ... is flexible enough to account for great variation in the nature of the work performed in, and the challenges presented by, different cases." *Id.*, at ——, 107 S.Ct. at 3091. Justice O'Connor emphasized that the "fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency." *Id.*, at ——, 107 S.Ct. at 3090. Second, "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or relevant market.'" *Id.*, at ——, 107 S.Ct. at 3091. In this regard, a court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel.

■ In the present action, plaintiff has failed to present evidence regarding the market treatment of contingent fees as a class. Instead, plaintiff's only evidence addresses the riskiness of this specific litiga-

tion. In an affidavit filed April 28, 1987, Alice Ratliff, an attorney who participated in this litigation, summarily addressed the riskiness of this particular litigation. The court finds no other evidence on this issue. Similarly, the court is of the opinion that a plaintiff, such as Crest Street, could locate competent counsel without the benefit of a contingency enhancement. Discrimination cases are often handled on a contingency fee basis, and plaintiff did not present, nor is the court aware of, any evidence that this particular case was an "unpopular" one in the community. *Johnson*, 488 F.2d at 719. Indeed, there was much community support for the prosecution of the case.

Accordingly, the court concludes that a contingency enhancement of the lodestar is inappropriate in this case. The lodestar adequately accounts for the peculiar risks, complexities, and difficulties of the specific facts of this case, and Crest Street has not presented, nor is the court aware of, reasons appropriate under *Delaware Valley* for enhancing the award.

*VII. Whether Crest Street Can Recover Attorney's Fees For Time Spent Seeking To Recover Fees, Including Time Spent In The Separate Litigation To Recover Attorney's Fees?*

■ As a general proposition, prevailing parties may recover attorney's fees for all time that is "reasonably expended *on the litigation.*" *Webb*, 471 U.S. at 242, 105 S.Ct. at 1928 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939). Accordingly, attorneys commonly seek fees "for services at both the trial and appellate levels, including [the time] expended to resolve the issue of attorneys' fees." *Young v. Kenley*, 641 F.2d 192, 195 (4th Cir.1981). Under this rule, it is clear that counsel for Crest Street may recover compensation for the time spent attempting to recover attorney's fees *in the present action.* These hours are reasonable, and the court will award full compensation for these hours. In addition, the court recognizes that Crest Street's attorneys reasonably expended ad-

Marshall, and Stevens expressed their opinion in dissent. The plurality opinion rejected the

notion of a contingency multiplier.

ditional time seeking fees, in this action, for which an award is not requested. It is proper that the fee award compensate all of the time reasonably spent in this litigation, and the court, in its discretion, will order compensation for 60 hours of work at $85 per hour (or $5,100).

It is equally clear, however, that it is improper for this court to compensate the hours spent in the separate action (*Crest I, II,* and *III*) to recover attorney's fees. Section 1988 and *Crest III* require an attorney to move for attorney's fees in the lawsuit to enforce one of the listed statutes, and *Webb* and *Hensley* only permit fees for time reasonably expended in the particular lawsuit in controversy. Applying these rules to the present issue, it is obvious that a motion filed in "Action A" to recover fees for work performed in "Action B" must fail. Such a motion fails to comport with the procedure that § 1988 and *Crest III* mandate, and it seeks fees for work that is clearly not compensable under *Webb* and *Hensley.*

Additional reasons support the court's decision to deny fees for the work Crest Street performed in the separate action. A court's decision to award attorney's fees involves a two step determination. The court must first decide the litigant's "general entitlement" to an award of fees. This decision requires the court to inquire whether *any* fees are permissible under the relevant statutory and case law. Only after answering "yes" to this first inquiry does a court reach step two, determining the fee applicant's "specific entitlement" to an award. This determination requires the court to decide what particular work, such as efforts to recover attorney's fees, is compensable.

In the present case, plaintiff fails to demonstrate a general entitlement to attorney's fees for the hours expended in the separate litigation. In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the "American Rule" that in "the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attor-

neys' fee from the loser." *Alyeska* rejected the burgeoning practice in the lower courts of shifting the burden of fees to the losing defendant whenever the victorious plaintiff had vindicated what the judiciary perceived to be important public rights, acting as a "private attorney general" for the public good. *Id.,* 421 U.S. at 263–69, 95 S.Ct. at 1624–27. The thrust of the entire *Alyeska* decision is that awards of attorney's fees are to be made pursuant to statute or recognized exceptions to the American Rule, not pursuant to the whims of the courts. There is no authority supporting an award of attorney's fees for the *Crest Street* action. Neither statutory law nor the exceptions to the American Rule allow a recovery of fees for a second lawsuit instigated solely to recover attorney's fees for work performed in a first lawsuit.

In particular, 42 U.S.C. § 1988 does not authorize a fee award for the separate action. Section 1988 permits recovery of fees only in actions to enforce the substantive statutes listed therein, and an action solely to recover fees is not an "action to enforce" a statute listed in § 1988. It is, instead, more appropriately denominated as an action to enforce § 1988, and the *Crest III* opinion makes explicit that § 1988 does not give rise to an independent cause of action. *Crest III,* —— U.S. ——, 107 S.Ct. at 342, 93 L.Ed.2d at 198. Even if, somehow, this court reached the conclusion that the separate litigation was a "proceeding to enforce" one of the statutes enumerated in § 1988, the court would still be unable to award fees. The court only has the discretion to "allow the prevailing party" attorney's fees under § 1988. Clearly, Crest Street did not prevail in the separate action.

The *Young* rule, which allows a party to seek compensation for work expended in the effort to recover attorney's fees, does not alter the court's conclusion. It is only after a determination that fees are proper that a court or litigant should turn to the question of what particular hours are compensable. Recitation of the rule that efforts to recover attorney's fees are compensable puts the cart before the horse. As explained earlier, a court must decide

whether any fees are permissible before deciding what particular work, such as efforts to recover attorney's fees, is compensable.

Moreover, Crest Street did not demonstrate a specific entitlement to recover for the work performed in the separate action because Crest Street failed to demonstrate that that work was reasonable. Section 1988 allows an award of a "reasonable" attorney's fee and a court has a duty to exclude hours that were not reasonably spent. Crest Street travelled a highly unusual path in seeking fees. Attorneys normally move for costs and attorney's fees, after the entry of judgment[9], in the action to enforce the particular substantive right. A separate action is unnecessary. Indeed, the authority existing at the time Crest Street decided to pursue attorney's fees indicated that a separate action was improper under § 1988.[10] Moreover, the court can divine no advantage to attempting to pursue the fee issue in a separate action. Crest Street had nothing to gain by pursuing this unusual and risky course of action. In this light, the court must conclude that the hours spent in the separate action were hours unreasonably spent in the attempt to resolve this action.[11]

Finally, even if the court views this action and the companion case as one overarching litigation, *Hensley* dictates that the court not reward plaintiff's attorney for the time spent in the separate action. *Hensley* holds that where "the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the

9. The procedure of allowing a party to pursue attorney's fees after an entry of judgment serves judicial economy. It allows the court, in appropriate cases, to defer ruling on a motion for attorney's fees until after appellate review of the substantive issues in the case. *See Hicks v. Southern Maryland Health Systems Agency*, 805 F.2d 1165 (4th Cir.1986); *Reed v. Health and Human Services*, 774 F.2d 1270 (4th Cir.1985).

10. In *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), a case decided prior to the 1976 amendment which added the attorney's fees provision to section 1988, the Supreme Court ruled that section 1988 does not create an independent cause of action. The Court viewed § 1988 as authorizing remedies for violations of the other civil rights statutes. The language and legislative history of the 1976 amendments gave no basis for deviating from this conclusion. The statute allows attorney's fees "as part of the costs" and the legislative history states the purpose of the amendment as being "to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties." S.Rep. No. 94-1011, 94th Cong., 2d Sess. 2 (1976) *reprinted in* [1976] U.S. Code Cong. & Ad.News 5908, 5909-10. The Supreme Court appears to have reaffirmed the *Moor* conclusion, after the 1976 amendment to § 1988, in *Monell v. Department of Social Services*, 436 U.S. 658, 701 n. 66, 98 S.Ct. 2018, 2041 n. 66, 56 L.Ed.2d 611 (1978) ("Nothing we say today affects the conclusion reached in *Moor* ..."). The courts interpreting § 1988 and the Supreme Court opinions at the time Crest Street filed its separate action had uniformly concluded that § 1988 does not create a separate cause of action. *See Horacek v. Thone*, 710 F.2d 496, 499 (8th Cir.1983); *Latino Project, Inc. v. City of Camden*, 701 F.2d 262, 264 (3d Cir.1983) ("Congress intended section 1988 to authorize an award of attorney's fees only to a party who substantially prevails on a civil rights claim in a lawsuit"); *Estes v. Tuscaloosa County, Ala.*, 696 F.2d 898, 901 (11th Cir.1983); *Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir.1977); *Martinez v. Winner*, 548 F.Supp. 278, 323 (D.Colo.1982); *Derheim v. Hennepin County Bureau of Social Services*, 524 F.Supp. 1321, 1324 (D.Minn.1981), *aff'd on other grounds*, 688 F.2d 66 (8th Cir.1982); *Redd v. Lambert*, 522 F.Supp. 608, 610-11 (N.D.Miss.1981), *aff'd*, 674 F.2d 1032 (5th Cir.1982); *Reeves v. American Optical Co.*, 408 F.Supp. 297, 302 (W.D.N.Y.1976).

11. Crest Street argues that the court should treat the separate action in the same fashion as the courts normally treat administrative proceedings. The court does not find this analogy useful. An administrative proceeding followed by a court action is an entirely different animal from two separate federal lawsuits. Moreover, Crest Street could not recover under the rule that specifies when compensation is available for work on an administrative level. *Webb*, 471 U.S. at 243, 105 S.Ct. at 1929, makes clear that where administrative work is not a "proceeding to enforce" one of the statutes listed in § 1988, only "the discrete portion of the work product" that is "useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached" before resolution is compensable. The Supreme Court ruled that the separate action was not a "proceeding to enforce" one of the laws listed in § 1988, and the filing and litigating of an unsuccessful separate action to recover attorney's fees is not ordinarily necessary before a court can rule on the propriety of awarding attorney's fees.

amount of a reasonable fee." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. In litigating this case and the companion case, the work and claims in the separate action for attorney's fees are distinct from the other work and claims, and Crest Street clearly failed to prevail on the claims advanced in the separate action.

In summary, awarding Crest Street fees for the separate action is legally impermissible, and the facts indicate that such an award would be highly unreasonable. Fairness demands that the court not make such an award. To allow a plaintiff to embark on an irregular, unnecessary procedural course, and then to require a defendant to pay substantial sums (plaintiff claims in excess of $75,000 in this case) to that plaintiff, after a Supreme Court decision ruling that the plaintiff's course of action was legally impermissible, would be patently unjust.

### VIII. Recovery of Costs

Crest Street claims three categories of costs: (1) general costs associated with the prosecution of the Title VI action, (2) fees paid to an expert planning consultant, and (3) costs incurred in the separate action to recover fees.

#### 1. General Items of Costs

As a general rule, statutory provisions permitting an award of a reasonable attorney's fee "as part of the costs" embrace a concept of a fee which includes all "incidental and necessary expenses incurred in furnishing effective and competent representation." A court may award such out-of-pocket expenses in addition to statutory costs. *Northcross v. Board of Education,* 611 F.2d 624, 639 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (citing *Beazer v. New York City Transit Authority,* 558 F.2d 97, 100 (2d Cir.1977), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979)). The Fourth Circuit follows this rule. In *Wheeler v. Durham City Board of Education,* 585 F.2d 618 (4th Cir.1978), the court concluded that the statutory authorization of reasonable attorney's fees "was intended to include litigation expenses" and awarded secretarial,

copying, telephone, and necessary travel expenses. In this action, Crest Street reasonably claims $327.50 in long distance phone calls and $579.17 in out of town travel. In addition, the court allows an additional $100.00 to cover the costs incident to pursuing attorney's fees in this action.

#### 2. Expert Planning Consultant

In *Wheeler,* the Fourth Circuit addressed the propriety of reimbursing the fees and expenses of outside, non-legal consultants and experts:

> Their fees and expenses are traditionally not regarded as attorneys' fees, however essential their services may be to the successful preparation and trial of a complex case. We think that their fees and expenses may not be recovered under the rubric of attorneys' fees under [20 U.S.C.] § 1617.

*Wheeler,* 585 F.2d at 624. The court indicated that the same result would follow under 42 U.S.C. § 1988. *Id.,* 585 F.2d at 621. The Fourth Circuit recently reaffirmed the *Wheeler* rule. In *Davis v. Richmond, Fredericksburg & Potomac R. Co.,* 803 F.2d 1322, 1328 (4th Cir.1986), the court concluded that a party has no statutory right to compensation for expert witnesses.

*Davis* does indicate that "a party might state a non-statutory claim for expert witness fees based upon the general equitable powers of a district court." Such a claim, the court further stated, "would be addressed to the sound discretion of the trial court." *Davis,* 803 F.2d at 1328. In exercising such discretion, most courts require that extraordinary or exceptional circumstances exist before a court is justified in awarding expert witness fees. *See* Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. 553, 581–84 (1984); *Quy v. Air America, Inc.,* 667 F.2d 1059, 1066 n. 11 (D.C.Cir.1981); *Illinois v. Sangamo Construction Co.,* 657 F.2d 855, 865 n. 14 (7th Cir.1981); *Sperry Rand Corporation v. A–T–O, Inc.,* 58 F.R.D. 132, 137 (E.D.Va.1973).

**404**

■ After reviewing the facts of the instant case, the court denies Crest Street's request for fees for the work performed by the expert planning consultant. The "exceptional circumstances" upon which courts normally base a discretionary award of fees to experts are not present in this case. The court did not require plaintiff to produce an expert. *Quy*, 667 F.2d at 1066 n. 11 (exceptional circumstances might arise if court requires expert). Nor did the plaintiff seek the approval of the court before incurring the costs of the expert. *Cagle v. Cox*, 87 F.R.D. 467, 471 (E.D.Va. 1980) (cost of expert may be compensated where there was application to and approval of court prior to incurring costs). Moreover, there is no evidence that the expert's work was indispensible to Crest Street's case. *See e.g. Coleman v. Omaha*, 714 F.2d 804, 809 (8th Cir.1983) (expert witness fees may be awarded even without prior court approval, if testimony "crucial" to issues); *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 205–06 (3d Cir.1981) (district court has "equitable discretion, to award expert witness fees when the expert's testimony is indispensible"). In summary, this case does not present the type of facts that would lead this court to circumvent the traditional thinking that the taxing of expert fees as costs is for the exceptional case.[12]

*3. Costs Incurred In Separate Action*

Crest Street incurs the same difficulties in recovering costs for its separate litigation as present in the attempt to recover attorney's fees for that litigation. This court is only empowered to reimburse plaintiff for the costs incurred in this action. Accordingly, for reasons stated elsewhere in this opinion, the court denies any compensation for costs incurred in the separate action.

CONCLUSION

The court concludes that Crest Street crossed the "prevailing party" threshold in this litigation, thereby entitling Crest Street to an award of some fees. The court finds the amount of fees claimed, however, completely unreasonable. The documentation of hours was shoddy, the number of hours worked was excessive, and the fee request was unreasonable in light of the results obtained on the merits. With these facts in mind, the court finds a proper fee award, with respect to the substantive claims, to be $51,831.31. No enhancement for the contingency of success is indicated, and the court will award $906.67 in additional costs.

Moreover, the court denies Crest Street's attempt to recover attorney's fee for work done in its separate lawsuit. Legal authority, factual reasonableness, fairness, and the common procedures of the courts indicate that such an award would be improper. Even if an award were proper, the court finds the time spent in that litigation to be completely unreasonable. Similarly, the court denies the costs incurred in the separate litigation. The court will allow, however, $5,100.00 in attorney's fees and $100.00 in costs for counsel's work in moving to recover attorney's fees in this action.

In sum, the court will enter an order requiring the NCDOT to pay Crest Street $57,937.98 in attorney's fees and costs. Mindful of the Supreme Court's admonition that there should not be a second major litigation over attorney's fees, the court hopes that this opinion will conclude this litigation. The court has attempted to reach a result that is legally sound and equitably fair. The NCDOT should recognize that plaintiff received favorable relief for which plaintiff's counsel should be compensated. Equally, plaintiff should admit the numerous problems, discussed herein, with its fee request. In this light, the court urges counsel for each party to eval-

12. The most recent Supreme Court case on fees for experts supports the decision in the present case. In *Crawford Fitting Co. v. J.T. Gibbons Inc.*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Court held that courts are bound by the limitations set out in 18 U.S.C. § 1821 and § 1920 ($30–per-day limit) when taxing expert witness fees as costs against the losing party. Although the opinion does not specifically address 42 U.S.C. § 1988, it is persuasive authority in this case.

uate the case before causing the expenditure of additional judicial resources. The court directs the parties to the *Hensley* opinion wherein Justice Brennan stated that an appeal from an award of attorney's fees is "one of the least socially productive types of litigation imaginable." *Hensley,* 461 U.S. at 442, 103 S.Ct. at 1944 (Brennan, J., concurring in part and dissenting in part).

### ORDER

Federal defendants Claude S. Brinegar, as Secretary of the United States Department of Transportation, and T.J. Morawski, as Division Engineer, Federal Highway Administration, move that the court dismiss them as parties from this action. These defendants argue that there is no actual case or controversy pending between the United States or any of its officers and the other parties involved in this litigation. Plaintiff Crest Street community supports the federal defendant's motion, but the North Carolina Department of Transportation expresses opposition. Having considered the arguments of the parties, the court grants the motion. Neither the plaintiff nor the state defendants have outstanding legal claims against these federal defendants. Therefore, IT IS ORDERED that Claude S. Brinegar, as Secretary of the United States Department of Transportation, and T.J. Morawski, as Division Engineer, Federal Highway Administration be, and the same hereby are, DISMISSED as parties from this action.

### ORDER

For the reasons set forth in a memorandum opinion entered contemporaneously herewith, IT IS ORDERED that the defendant North Carolina Department of Transportation pay fifty seven thousand, nine hundred thirty seven dollars and ninety eight cents ($57,937.98), in attorney's fees and costs, to plaintiff/intervenor Crest Street Community Council, Inc.